**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

JEANNIE PARSONS, successor Personal
Representative of the Estate of Randy J.
Parsons, deceased,

        Plaintiff,

v.

SARA HOPE HEEBSH, P.A.,
CORRECTIONAL MEDICAL SERVICES,
INC., individually and severally, and the
MICHIGAN DEPARTMENT OF TREASURY,

        Defendants.

_____ /

Case Number: 09-14411

STEPHEN J. MURPHY, III
UNITED STATES DISTRICT COURT

VIRGINIA M. MORGAN
UNITED STATES MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION GRANTING MICHIGAN DEPARTMENT OF TREASURY'S MOTION TO DISMISS (Doc. No. 13)

In this prisoner civil rights case, Plaintiff Jeannie Parsons, the successor Personal Representative for the estate of Randy J. Parsons, the decedent, accuses Defendants Sara Hope Heebsh, P.A. and Correctional Medical Services, Inc. of denying Parsons adequate medical care, in violation of 42 U.S.C. § 1983. Plaintiff also alleges that Defendant Michigan Department of Treasury (MDT) breached a settlement agreement in which Parsons agreed to pay MDT a percentage of an annuity paid to him as a result of a successful § 1983 lawsuit in the 1980s. Plaintiff contends that MDT's breach and overcollection of annuity payments violates due process. Presently before the court is MDT's motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1), (2), (3), and (6). The motion was fully briefed, and the court held oral argument on February 11, 2010. For the reasons discussed below, the court recommends that MDT's motion to dismiss be

1

**GRANTED**.

**I. Background**

In 1989, Randy Parsons, the decedent, entered into a settlement with Mason County to resolve his § 1983 claim against the county. Pursuant to the settlement, Parsons received an annuity that paid him approximately $1600 per month for life or 30 years, whichever was longer. The following year, Parsons was convicted of second-degree murder and sentenced to 15 to 30 years' imprisonment. Thereafter, the State Treasurer filed a complaint in Mason County Circuit Court against inmate Parsons for reimbursement of his cost of care in prison pursuant to the Sate Correctional Facility Reimbursement Act, Mich. Comp. Laws § 800.401, *et seq*.

On August 10, 1992, Parsons filed for bankruptcy in the Western District of Michigan. The estate of Parsons' victim, William Wright, filed an adversary complaint in the bankruptcy case to determine the dischargeability of the wrongful death judgment against Parsons. In order to resolve the State Treasurer's claim for reimbursement and the Wright Estate's claim for satisfaction of the wrongful death judgment, Parsons entered into a settlement agreement which provided that the Wright Estate would receive one-third of Parsons' annuity payments. The balance of the annuity was distributed between the Michigan Department of Treasury, which received 47% of the annuity payments until Parsons' release from prison, and Parsons, who received 20% of the annuity payments while in prison. Upon Parsons' release from prison, the MDT was to receive 20% and Parson would receive 47% of the annuity payments.

During his incarceration, Parsons was declared mentally ill and he developed a seizure disorder; he was medicated for both conditions. On August 25, 2004, Parsons was transferred from Gus Harrison Correctional Facility to Standish Maximum Correctional Facility ("Standish").

2

Parsons arrived without his medications but he was examined by medical and mental health professionals the next day. Both the medical and mental health professionals prescribed and ordered Parsons' anti-seizure and anti-psychotic drugs. Nonetheless, on August 28, 2004, Parsons was found unresponsive in his cell and was later pronounced dead. According to the toxicology report, Parsons did not have any anti-seizure medication in his system at the time of his death.

In August 2007, Plaintiff filed a wrongful death suit in this court, alleging violations of the Eighth and Fourteenth Amendments by various MDOC officials. *Parsons v. Caruso*, *et al.*, No. 07-13335, E.D. Mich. (2007) (Murphy, J.). This court has recommended that the defendants in that case be granted summary judgment. *Parsons v. Caruso*, *et al.*, No. 07-13335, Doc. No. 136.

The instant action was filed on November 10, 2009 against P.A. Heebsh, the Physician's Assistant who treated Parsons on August 26, 2004, Correctional Medical Services, Inc., the medical provider for MDOC, and the Michigan Department of Treasury, which continues to receive 47% of Parsons' annuity payments.

Presently before the court is MDT's motion to dismiss. (Doc. No. 13). For the reasons discussed below, MDT's motion should be granted.

## II. Standards of Review

Federal Rule of Civil Procedure 12(b)(1) provides:

Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion: (1) lack of subject-matter jurisdiction;....

Fed. R .Civ. P. 12(b)(1). "When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Madison-Hughes v. Shalala*, 80 F.3d 1121, 1130 (6th Cir.1996). Further, a district court may

"resolve factual disputes when necessary to resolve challenges to subject matter jurisdiction." *Id.*

Federal Rule of Civil Procedure 12(b)(2) allows a party to move for dismissal for lack of personal jurisdiction. The party seeking to assert personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) bears the burden of demonstrating that such jurisdiction exists. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002). To defeat such a motion, a party in Plaintiffs' position need only make a prima facie showing of jurisdiction. *Id.*

Furthermore, a "court disposing of a 12(b)(2) motion does not weigh the controverting assertions of the party seeking dismissal," because the court wants "to prevent non-resident defendants from regularly avoiding personal jurisdiction simply by filing an affidavit denying all jurisdictional facts." *Theunissen v. Matthews*, 935 F.2d 1454, 1459 (6th Cir.1991) Dismissal in this procedural posture is proper only if all the specific facts which the Plaintiffs allege collectively fail to state a prima facie case for jurisdiction. *Id.*

Rule 12(b)(3) permits dismissal for improper venue. Once a defendant raises the question of proper venue, the plaintiff has the burden of establishing that venue is proper. *Audi AG v. Volkswagen of America, Inc.*, 204 F.Supp.2d 1014, 1017 (E.D. Mich. 2002). "The Court may examine facts outside the complaint but must draw all reasonable inferences and resolve factual conflicts in favor of the plaintiff." *Id.* (citations omitted). Venue in federal-question cases lies in the district in which any defendant resides or in which a substantial part of the events or omissions giving rise to the claim occurred. 28 U.S.C. § 1391(b).

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b) (6), a court "must read all

well-pleaded allegations of the complaint as true." *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 88 (6th Cir.1997) (citing *Bower v. Federal Express Corp.*, 96 F.3d 200, 203 (6th Cir.1996)). In addition, a court must construe all allegations in the light most favorable to the plaintiff. *Bower*, 96 F.3d at 203 (citing *Sinay v. Lamson & Sessions*, 948 F.2d 1037, 1039 (6th Cir.1991)). In order to "survive a motion to dismiss under Rule 12(b)(6), a 'complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.'" *Advocacy Org. for Patients and Providers v. Auto Club Ins. Ass'n.*, 176 F.3d 315, 319 (6th Cir.1999) (quoting *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir.1988)).

### III. Analysis

#### A. Eleventh Amendment Immunity

MDT first argues that the Eleventh Amendment to the United States Constitution bars Plaintiff's suit against it because MDT has not expressly waived its jurisdictional immunity. (Doc.l No. 13, MDT's Mot. to Dismiss 3). Plaintiff responds that MDT voluntarily submitted to the jurisdiction of this court when, in 1992, it filed a claim in Parsons' bankruptcy action in the Western District of Michigan to recover the costs of Parsons' incarceration. (Doc. No. 16, Pl.'s Resp. 10).

The Eleventh Amendment bars a suit brought in federal court against a state and its departments or agencies unless the state has waived its sovereign immunity or unequivocally consented to be sued. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100, 104 (1984); *Abick v. Michigan*, 803 F.2d 874, 876-77 (6th Cir. 1986). "[W]e require an unequivocal indication that the State intends to consent to federal jurisdiction that otherwise would be barred by the Eleventh Amendment." *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 238 n. 1 (1985).

In the instant case, there is no "unequivocal indication" that MDT, an arm of the State, intends to consent to federal jurisdiction. The MDT's participation in a bankruptcy case filed 18 years ago is not an unequivocal indication that it is waiving is sovereign immunity in this case. To hold that MDT's filing of a claim in a bankruptcy case that occurred nearly 20 years before the filing of the instant action evidences consent to jurisdiction, when this case was not even conceivable at that time, would be a gross manipulation of Eleventh Amendment immunity precedent. Therefore, because there is no evidence that MDT consented to jurisdiction in this action, MDT is entitled to Eleventh Amendment immunity and Plaintiff's claims against it should be dismissed.

**B. 42 U.S.C. § 1983 Claim**

MDT also argues it is entitled to dismissal of Plaintiff's § 1983 claim because MDT is not subject to § 1983 liability and Plaintiff's § 1983 claim is premised on a contract dispute. (MDT's Mot. to Dismiss 5). Plaintiff argues she has asserted non-frivolous claims, under 42 U.S.C. § 1983, against Heebsh and CMS in her complaint and, therefore, this court should exercise supplemental jurisdiction over her claims against MDT. (Pl.'s Resp. 12-13). Plaintiff further argues that this court has original jurisdiction, pursuant to the Supremacy Clause, because Parsons' assets were taken under state law, even though the assets were protected by federal law. (Pl.'s Resp. 14).

First, this court holds that the MDT, as an arm of the State of Michigan, is not a "person" subject to liability under 42 U.S.C. § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989)**.** Thus, Plaintiff is legally precluded from bring a claim pursuant to 42 U.S.C. § 1983 against the Michigan Department of Treasury. Moreover, it is undisputed that federal courts do not have original jurisdiction over state law contract claims. For these reasons, MDT is entitled to dismissal of Count II of Plaintiff's complaint.

Plaintiff's argument that this court should exercise supplemental jurisdiction over Plaintiff's claims against MDT is without merit. "[T]he purpose of supplemental jurisdiction . . . is to facilitate the resolution of claims that are so closely related to claims for which federal jurisdiction originally lies that the supplemental claims are part of the same case or controversy as the claim independently invoking federal jurisdiction." *O'Brien v. Ed Donnelly Enterprises, Inc.*, 575 F.3d 567, 580 (6th Cir. 2009) (citing 13D Wright, Miller, Cooper, & Freer, Federal Practice and Procedure § 3657 at 317 n. 4 (3d ed. 2008)). Here, Plaintiff's breach of contract claim against MDT is not "so closely related" to Plaintiff's 42 U.S.C. § 1983 claims against Heebsh and CMS for failure to provide adequate medical care that it would be efficient to resolve the breach of contract claim in federal court. Simply put, the breach of contract claim against MDT does not arise from the same case or controversy that gives rise to Plaintiff's § 1983 claims against Heebsh and CMS. The breach of contract claim arises from a dispute over the language of the settlement agreement Parsons and MDT entered into in 1994, which settled MDT's claim for reimbursement of Parsons' incarceration costs. That claim is entirely unrelated to Plaintiff's wrongful death suit against Heebsh and CMS, which is premised on the assertion that Heebsh and CMS were deliberately indifferent in providing, or failing to provide, medical care to Parsons before his death in prison. Thus, exercising supplemental jurisdiction under 28 U.S.C. § 1367(a) would be inappropriate in this case, as the claims against MDT and Heebsh/CMS do not arise from a common nucleus of fact.

Plaintiff's argument that this court has original jurisdiction pursuant to the Supremacy Clause is likewise without merit. Plaintiff argues that because Parsons recovered the annuity at issue in a case under 42 U.S.C. § 1983, for a constitutional violation that he suffered while incarcerated by the county authorities, his annuity is exempt from Michigan's reimbursement laws under the Supremacy

Clause of the United States Constitution. (Pl.'s Resp. 13). Although it is true that the Eighth Circuit Court of Appeals held in *Hankins v. Finnel*, 964 F.2d 853, 861 (8th Cir. 1992) that a state may not collect reimbursement for incarceration costs from a punitive damages judgment recovered in a § 1983 action against the state, *Hankins* is distinguishable from this case. First, Parsons recovered a § 1983 judgment against Mason County, not the State of Michigan and the State of Michigan is the entity that sought reimbursement for incarceration costs incurred while Parsons was incarcerated in state prison. Therefore, reimbursement to the State of Michigan does not subvert the purposes of § 1983 because Parsons did not win a punitive damage award or any other award from the State of Michigan that the state then attempted to collect for reimbursement. In addition, Parsons agreed, in a settlement agreement written by his counsel, to reimbursement the state for his incarceration costs with a percentage of his annuity. Thus, for these two reasons Parsons' annuity was not taken under state law, nor was it protected by federal law. Therefore, jurisdiction pursuant to the Supremacy Clause does not exist.

Because Plaintiff has not stated a viable federal claim against MDT, and there is no reason to exercise supplemental jurisdiction, Plaintiff's claims against MDT should be dismissed.

### C. Diversity Jurisdiction

MDT also argues that Plaintiff's complaint against it be dismissed because Plaintiff has not established that diversity jurisdiction exists. (MDT's Mot. to Dismiss 8-9). Plaintiff does not dispute that diversity jurisdiction is lacking. As discussed above, there is no federal question or supplemental jurisdiction in this case, and because diversity jurisdiction is also lacking, this court does not have jurisdiction over this matter, and MDT should be dismissed.

**D. Misjoinder**

MDT's final argument is that Plaintiff improperly joined it in her wrongful death lawsuit. (MDT's Mot. to Dismiss 10). MDT notes that Plaintiff does not allege that MDT is jointly and severally liable for Parsons' death or that Heebsh and CMS are liable for the alleged breach of the 1994 settlement agreement. (*Id.* at 11). Also, MDT argues that the breach of the settlement agreement and Parsons' death are unrelated and do not arise out of the same transaction or occurrence and, thus, there is no common question of law or fact. (*Id.* at 11).

Plaintiff did not respond to MDT's misjoinder argument in her written response. At the hearing, however, Plaintiff argued that MDT was properly joined in this lawsuit because there was an issue regarding whether Parsons' received the medical care that he paid for with his reimbursements to the MDT when the medical care administered allegedly caused his death.

Federal Rule of Civil Procedure 20, which governs permissive joinder, provides, in relevant part:

> (2) Defendants. Persons-as well as a vessel, cargo, or other property subject to admiralty process in rem-may be joined in one action as defendants if:
> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
> (B) any question of law or fact common to all defendants will arise in the action.

Misjoinder of parties can be sufficient to dismiss misjoined parties under Fed. R. Civ. P. 21. *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir.1988) ("Parties may be dropped . . . by order of the court . . . of its own initiative at any stage of the action and on such terms as are just.").

Plaintiff has not alleged that Heebsh, CMS, and MDT are jointly and several liable, nor do Plaintiff's claims against Heebsh, CMS, and MDT arise form the same transaction, occurrence, or

series of transactions or occurrences. Plaintiff alleges that Heebsh and CMS' deliberate indifference caused Parsons' death. In contrast, Plaintiff alleges that MDT has over collected from Parsons' annuity after his death. Plaintiff's argument that the MDT is somehow liable because the quality of care was not worth 47% of the annuity is not pled, and even if pled, is not cognizable. Plaintiff's breach of contract claim against MDT does not, therefore, arise from the same occurrence or transaction as Plaintiff's claims against Heebsh and CMS, which arise from the circumstances surrounding Parsons' death. Moreover, Plaintiff failed to assert the kind of common legal or factual question, contemplated under Rule 20(a)(1), to justify joinder of Heebsh, CMS, and MDT in a single action. Therefore, the court finds that Plaintiff misjoined MDT in this action, and recommends that MDT be dismissed.

## IV. Conclusion

For any or all of the reasons discussed above, MDT's motion to dismiss should be **GRANTED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

SO ORDERED.

S/Virginia M. Morgan
Virginia M. Morgan
United States Magistrate Judge

Dated: February 23, 2010

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System and/or U. S. Mail on February 23, 2010.

s/Jane Johnson
Case Manager to
Magistrate Judge Virginia M. Morgan