UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEANNIE PARSONS, successor
Personal Representative of Estate of
Randy J. Parsons, deceased,

    Plaintiff,

v.

SARA HOPE HEEBSH,
CORRECTIONAL MEDICAL SERVICES
INC., and MICHIGAN DEPARTMENT OF
TREASURY,

    Defendants.
                                     /

Case No. 09-cv-14411

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER ADOPTING, IN PART, REPORT AND
RECOMMENDATION** (docket no. 18) **AND GRANTING DEFENDANT
MICHIGAN DEPARTMENT OF TREASURY'S MOTION TO DISMISS** (docket no. 13)

    This case involves the alleged constitutionally deficient medical care provided to Randy Parsons just prior to his death in jail. Parsons died in prison in 2004 from a seizure. His estate ("Estate" or "Plaintiff") now claims that defendants Sarah Heebsh and her employer, Correctional Medical Services, are responsible for his death because Heebsh failed to administer anti-seizure medication to Parsons despite knowing he was in dire need of it. Plaintiff sues Heebsh under 42 U.S.C. § 1983, alleging she violated Parsons's Eighth and Fourteenth Amendment rights by exhibiting a deliberate indifference to his serious medical needs. Plaintiff sues Correctional Medical Services under § 1983, alleging it instituted an unconstitutional policy, custom, or practice pursuant to which Heebsh acted. *See Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658 (1978).

    Plaintiff also sues the Michigan Department of Treasury ("Department"), alleging that it breached a settlement agreement it entered into with Parsons in 1994, thereby violating state contract law and the Due Process Clause.

The Department moves to dismiss the claim against it on the following grounds: 1) sovereign immunity; 2) failure to state a due process claim; 3) lack of subject matter jurisdiction;[1] and 4) misjoinder under Rule 20(a) of the Federal Rules of Civil Procedure. The matter was referred to a magistrate judge for all pre-trial proceedings and returns to the Court on the report and recommendation of the magistrate judge, who recommends the Court grant the Department's motion for any or all of the reasons raised by the Department.

## STANDARD OF REVIEW

A district court's standard of review for a report and recommendation depends upon whether a party files objections. The Court need not undertake any review at all with respect to portions of a report no party objects to. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). On the other hand, a district court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); *see also* 28

---

[1] The Department cites Rule 12(b)(3) as the proper procedural vehicle for raising lack of subject matter jurisdiction. Def's mot. at 9. The Department is seriously mistaken in this regard. Rule 12(b)(3) is the vehicle for challenging improper venue. Rule 12(b)(*1*) is the proper vehicle for raising lack of subject matter jurisdiction. The Department's briefing also is seriously wrong in its discussion of supplemental jurisdiction. As stated more fully below, the Department asks the Court to exercise its discretion not to hear Plaintiff's state law claim against it for the reason that the Department was misjoined under Rule 20. A motion under Rule 21 is the proper vehicle for raising misjoinder. *See* 7 Wright, Miller, & Kane, Federal Practice and Procedure § 1684, at 484 (3d ed. 2001) ("If a party is improperly joined, the appropriate remedy is to move under Rule 21 either to drop the party or for a severance of the claim by or against the party." (footnotes omitted)). Yet the Department does not cite Rule 21 anywhere in its brief. Furthermore, 28 U.S.C. § 1367 (c) does not include "misjoinder of a party" as a basis for declining to exercise otherwise established supplemental jurisdiction. Finally, the Department cites Rule 12(b)(2) as a basis for dismissing the claim on the basis of sovereign immunity. Rule 12(b)(2) deals with personal jurisdiction, which the Department does not challenge. Counsel for the Department submitted a brief which shows a lack of familiarity with Rule 12, is seriously deficient, and is of limited value to the Court.

U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."). Overly broad objections, however, do not satisfy the objection requirement. *See Spencer v. Bouchard*, 449 F.3d 721, 725 (6th Cir. 2006). "The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious." *Id.* Objections that merely dispute the correctness of the magistrate judge's recommended outcome, but fail to specify the findings believed to be erroneous, are too general to invoke the statutorily mandated de novo review. *Id.*

**FACTS**

The following facts were accurately set forth in the report and recommendation:

> In 1989, Randy Parsons, the decedent, entered into a settlement with Mason County to resolve his § 1983 claim against the county. Pursuant to the settlement, Parsons received an annuity that paid him approximately $1600 per month for life or 30 years, whichever was longer. The following year, Parsons was convicted of second-degree murder and sentenced to 15 to 30 years' imprisonment. Thereafter, the State Treasurer filed a complaint in Mason County Circuit Court against inmate Parsons for reimbursement of his cost of care in prison pursuant to the [State] Correctional Facility Reimbursement Act, Mich. Comp. Laws § 800.401, *et seq.*
>
> On August 10, 1992, Parsons filed for bankruptcy in the Western District of Michigan. The estate of Parsons' victim, William Wright, filed an adversary complaint in the bankruptcy case to determine the dischargeability of the wrongful death judgment against Parsons. In order to resolve the State Treasurer's claim for reimbursement and the Wright Estate's claim for satisfaction of the wrongful death judgment, Parsons entered into a settlement agreement which provided that the Wright Estate would receive one-third of Parsons' annuity payments. The balance of the annuity was distributed between the Michigan Department of Treasury, which received 47% of the annuity payments until Parsons' release from prison, and Parsons, who received 20% of the annuity payments while in prison. Upon Parsons' release from prison, the MDT was to receive 20% and Parson would receive 47% of the annuity payments.
>
> During his incarceration, Parsons was declared mentally ill and he developed a seizure disorder; he was medicated for both conditions. On August 25, 2004, Parsons was transferred from Gus Harrison Correctional Facility to Standish Maximum Correctional Facility ("Standish"). Parsons arrived without his

3

medications but he was examined by medical and mental health professionals the next day. Both the medical and mental health professionals prescribed and ordered Parsons' anti-seizure and anti-psychotic drugs. Nonetheless, on August 28, 2004, Parsons was found unresponsive in his cell and was later pronounced dead. According to the toxicology report, Parsons did not have any anti-seizure medication in his system at the time of his death.

Report and Recommendation, at 2-3.

Plaintiff sues the Department for continuing to draw 47% of the annuity even though Parsons has technically been released from prison.

## DISCUSSION

Plaintiff filed timely and specific objections to all portions of the report and recommendation, save one (discussed below), so the Court has conducted a de novo review of the entire record, including the complaint and attachments, the Department's motion and supporting brief, and Plaintiff's response brief.[2] The Court has also reviewed Plaintiff's objections to the report and the Department's response to the objections. Although the magistrate judge recommends granting the motion for many alternative reasons, the Court reaches only the issue of the Court's power to hear the case. Because the Court finds that it lacks subject matter jurisdiction over Plaintiff's claim against the Department, the Court grants the Department's motion in part, and only insofar as it challenges the Court's subject matter jurisdiction. The Court does not reach the remaining arguments raised by the Department.

Count two asserts a claim against the Department under 42 U.S.C. § 1983 for its alleged deprivation of the Estate's property interest without due process of law and breach of contract. Compl. ¶¶ 38-46. Because the claim arises under the Due Process Clause of the Fourteenth Amendment, the Court would have jurisdiction over this claim pursuant to

---

[2] The Department chose not to file a reply brief.

28 U.S.C. § 1331. The Estate, however, has abandoned its due process claim. Its remaining claim against the Department is for breach of contract.[3]

Plaintiff contends that the Court has subject matter jurisdiction over the contract claim for two reasons:1) the claim is preempted by federal law; 2) the Court has supplemental jurisdiction over the claim. The Court disagrees with both contentions, and holds that it lacks subject matter jurisdiction over the claim.

I. <u>Original Jurisdiction - Preemption</u>

Although not alleged in the complaint as a basis for subject matter jurisdiction, Plaintiff argues in response to the Department's motion, and in Plaintiff's objections to the report and recommendation, that the Supremacy Clause provides a sufficient basis for subject matter jurisdiction.[4] Plaintiff asserts that if a prisoner recovers money in an action under § 1983, pursuant to the Supremacy Clause, the money may be exempt from a state law requiring reimbursement for costs of incarceration. Pl.'s Resp. Br. 13. It cites the Eighth Circuit's decision in *Hankins v. Finnel*, 964 F.2d 853 (8th Cir. 1992).

---

[3] Plaintiff does not expressly abandon its due process claim, but has done so through its conduct and representations to the Court. Specifically, it did not respond to the Department's Rule 12(b)(6) challenge to the claim. Additionally, it asserts in its response brief that its claim against the Department is for breach of contract; it does not discuss due process. Plaintiff's sole reliance on supplemental jurisdiction and the Supremacy Clause to support its claim against the Department further demonstrates that Plaintiff concedes it has no viable due process claim against the Department. Accordingly, it has abandoned the claim.

[4] The Supremacy Clause provides:

> This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

U.S. Const. art. VI. § 1, cl. 2

5

In *Hankins*, the Eighth Circuit affirmed the district court's order prohibiting the state from attaching a damages award won by the plaintiff in a civil rights suit against a state employee. While in prison, the plaintiff successfully sued the employee in federal court under § 1983 for sexually molesting him in prison. The state indemnified the employee. Shortly thereafter, the state sought reimbursement in state court for the plaintiff's costs of incarceration. The plaintiff returned to federal court seeking to prevent the state from attaching his award. The district court first determined it had original jurisdiction over the action by virtue of ancillary jurisdiction, and that the state had waived sovereign immunity by agreeing to indemnify its employee and satisfy the judgment. Taking up the plaintiff's Supremacy Clause argument, the district court concluded that although no provision in § 1983 expressly conflicted with the state law authorizing reimbursement, the law nonetheless thwarted the objectives of § 1983. It explained: "If the State were permitted to seize the Section 1983 damage awards prisoners receive for prison employees' conduct, the prisoners would have no motive to bring such suits and the State and its employees would have no inducement to comply with federal law." 964 F.2d at 855 (quoting *Hankins v. Finnel*, 759 F. Supp. 569, 574 (W.D. Mo. 1991)). The district court held that the Supremacy Clause preempted the state statute as applied.

Over a dissent, the Eighth Circuit affirmed. The majority stated that while § 1983 did not expressly preempt the state law, preemption may also arise when "'state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Id.* at 861 (quoting *Schneidewind v. ANR Pipeline Co.*, 485 U.S. 293, 300 (1988)). It then recognized both purposes of § 1983 – compensation and deterrence – but addressed only deterrence, and concluded:

> The jury in this case awarded Hankins $1 in nominal damages and $3,000 in punitive damages. To allow the State to largely recoup this award would be

6

> inimical to the goals of the federal statute. As the district court observed, "neither the State nor its employees would have the incentive to comply with federal and constitutional rights of prisoners."

*Id.* (quoting *Hankins*, 759 F. Supp. at 574). The majority opinion recognized the narrowness of the issue before it: "section 1983 preempts the Missouri Incarceration Reimbursement Act *as it is applied in this case. To the extent that* the Act permits the State to recoup *the very monies* it has paid to satisfy a section 1983 judgment against one of its employees, the Act is invalidated under the Supremacy Clause." *Id.* (emphasis added).

Later courts have also recognized that the majority's decision was narrow. *See, e.g.*, *El-Tabech v. Clarke*, --- F.3d ----; 2010 WL 3190675, *4 (8th Cir. 2010) ("In *Hankins*, we carefully held that 'section 1983 preempts the Missouri Incarceration Reimbursement Act *as it is applied in this case.*'" (quoting *Hankins*, 964 F.2d at 861) (emphasis in original)); *Moore v. Jackson*, No. 04-1086, 2004 U.S. App. LEXIS 21332, *3 (8th Cir. Oct. 14, 2004) (per curiam) ("case [fell] outside the limited scope of *Hankins*" where prisoner's § 1983 judgment was rendered against state contractor providing medical services at prison, and contractor itself paid the judgment and was not indemnified by the state); *State Treasurer v. Rusiecki*, No. 242238, 2003 Mich. App. LEXIS 837, *3 (Mich. Ct. App. Mar. 27, 2003) (distinguishing *Hankins*; "[h]ere, the 1983 award was paid by an entity different from the state, and was compensation for a violation of rights that took place outside the correctional facility and preceded defendant's conviction. The deterrent effect was not focused on the state. The entity that violated defendant's rights was required to pay, and that payment is a deterrence to future violations, despite the fact that the money was received by the state."); *cf. State Treasurer v. Jackson*, 448 Mich. 916 (1995) (denying leave to appeal in case similar to instant matter; state treasurer obtained reimbursement for costs of

7

imprisonment from prisoner out of funds received from settlement award in action against *federal government* under the FTCA); *but see id.* (Levin, J. dissenting).

Plaintiff's reliance on *Hankins* suffers from a number of weaknesses.[5] First, Plaintiff relies on *Hankins* for the wrong reason. Plaintiff is not truly asserting here that Michigan's reimbursement statute, as it applies (or does not apply) in this case, contravenes the objectives of § 1983 and is preempted by the Supremacy Clause. That is, Plaintiff is not raising preemption here in an attempt to rescind the settlement agreement between Parsons and the Department, or to prevent the state from obtaining reimbursement at all. Rather, Plaintiff is raising the preemption argument solely as a basis for federal question jurisdiction over the breach of contract claim; it concedes the validity of the contract and is simply trying to enforce it. If Plaintiff believed § 1983 preempted the state statute in this case, the argument would have been ripe in response to the state's action against Parsons for reimbursement back the early 1990's. But, Parsons waived that argument by settling the action in the bankruptcy proceeding and *agreeing* to give to the State a portion of his § 1983 money judgment. The Estate's ability to raise the preemption issue at this time, after Parsons waived the argument by not raising it in the civil reimbursement action, and by raising it not for the purpose of *rescinding* the agreement but instead in an attempt to establish the Court's subject matter jurisdiction, is dubious. *Cf. Merrell Dow Pharms., Inc. v. Thompson*, 478 U.S. 804 (1986) (federal issue that constitutes an element of a state

---

[5] The Court notes that the complaint does not allege the Supremacy Clause as a basis of original jurisdiction over the contract claim against the Department. That basis was asserted for the first time in Plaintiff's brief in response to the Department's motion to dismiss, suggesting that Plaintiff made the argument after-the-fact, once it realized the due process theory was not a viable one.

cause of action is not sufficient to establish federal question jurisdiction).[6]  In fact, in *Hankins* itself, before reaching the preemption issue, the majority rejected the state's argument that the district court lacked jurisdiction over the action, and found jurisdiction by virtue of ancillary jurisdiction.  It did not rely on preemption to establish original jurisdiction.  Had preemption been sufficient to create jurisdiction, there would have been no need to determine whether the court had ancillary jurisdiction.[7]

Second, because Parsons *agreed* to give the Department a portion of his award, it was not taken under state law, but through consent.  Thus, even assuming the bankruptcy settlement agreement stood as an obstacle to the objectives of § 1983, it was not Michigan's reimbursement statute that stood in the way; it was Parsons's voluntary act.

Finally, aside these first two distinctions, the holding in *Hankins* (which is of limited value in cases with facts that are not virtually identical to those in *Hankins*) is simply inapplicable here.  Plaintiff is quite correct when it states, "if a prisoner recovers money in a case under 42 USC 1983, the money *may* nevertheless be exempt from the Reimbursement Act under the Supremacy Clause . . . ."  Pl.'s Resp. Br. 13 (emphasis added).  But, the limited range of cases in which this permissive statement becomes

---

[6] Plaintiff does not assert the existence of federal question jurisdiction by virtue of a state law claim that implicates significant federal issues, *see Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005), and the Court does not address the issue here.

[7] Though not clear from the opinion, it appears that the plaintiff in *Hankins* did raise the issue of whether § 1983 preemption itself could confer original jurisdiction.  The majority declined to reach the issue, however, because it concluded it had ancillary jurisdiction over the action.  *Hankins*, 964 F.3d at 860 n.10.  In the absence of any authority by Plaintiff for the proposition that § 1983 preemption can confer original jurisdiction over Plaintiff's contract claim, the Court adheres to the well-established maxim that it is to be presumed that a cause of action lies outside of a federal court's limited jurisdiction, and the burden of establishing jurisdiction rests on the party asserting it.  *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Metro Hydroelectric Co. v. Metro Parks*, 541 F.3d 605, 610 (6th Cir. 2008).

mandatory does not include this one. Unlike the plaintiff in *Hankins*, Parsons received a § 1983 award from an entity entirely distinct from the one seeking to recoup the award. In *Hankins*, it was the State of Missouri that both paid the damages and sought to recoup the costs of the plaintiff's incarceration out of those damages, thereby eliminating any deterrent effect served by § 1983. The state could violate the plaintiff's constitutional rights with impunity because any damages it would have to pay if found liable for constitutional violations it could later recoup through the reimbursement scheme. Here, however, it was Mason County – and not the Department or the State of Michigan – that was held responsible for violating the Parsons's constitutional rights. Repayment to the State of Michigan through the Department does not subvert the deterrent effect of § 1983. Mason County still had to pay Parsons, and it was never reimbursed by the State of Michigan.[8] That payment provided the deterrent effect served by § 1983. Whether or not the State of Michigan received a portion of the settlement proceeds, Mason County is still deterred from committing further civil rights violations. Therefore, permitting reimbursement for costs of incarceration does not subvert the deterrent purpose served by § 1983.[9]

---

[8] Plaintiff does not allege that Mason County was reimbursed with State money for its settlement with Plaintiff.

[9] Plaintiff does not assert that allowing reimbursement in this case subverts the other purpose served by § 1983: compensation for victims of constitutional violations. *See* Pl.'s Resp. Br. 14 ("To allow the State of Michigan to recoup monies paid out to satisfy a judgment against a corrections officer for constitutional violations obviates one of the very purposes of 42 USC Sec 1983 – *to deter such conduct*." (emphasis added)). But even if it did make this argument, it would be unavailing, as § 1983's compensation purpose was served in this case. While Parsons's award was greatly reduced, the reduction was due to preexisting obligations which he was responsible for satisfying regardless of whether he received money from the Mason County settlement. Specifically, Parsons was responsible for a judgment against him in the wrongful death civil action involving the victim of the murder charge for which Parson was ultimately convicted. Parsons was also responsible for reimbursing the State of Michigan for the costs of his incarceration, a cost which at least one Michigan Court of Appeals considers a "preexisting obligation." *See Rusiecki*, 2003 Mich. App. LEXIS 837, at *3 (allowing attachment of § 1983 judgment proceeds to satisfy

This case is analogous to *Moore v. Jackson*, in which a panel of the Eighth Circuit held that § 1983 did not preempt the application of Missouri's reimbursement statute. There, the plaintiff successfully sued Correctional Medical Systems under § 1983 and was awarded damages. The plaintiff moved to enjoin the State of Missouri from attaching the money received in the plaintiff's § 1983 judgment to repay the costs of his incarceration. The district court denied the injunction. It found *Hankins* did not apply because *Correctional Medical Systems* paid the judgment, thus leaving intact its incentive to respect the constitutional rights of inmates. 2004 U.S. App. LEXIS 21332, at *2. The Eighth Circuit affirmed. Because the judgment was not paid by the State, and because there was no evidence that the State intended to indemnify Correctional Medical Services for its payment to the plaintiff, the case fell outside the "limited scope of *Hankins*." *Id.* Since allowing *the State* to collect the plaintiff's judgment provided no benefit to Correctional Medical Systems,

---

costs of incarceration stating, "[t]here is no bar preventing money received as a result of a civil rights award being used to satisfy a preexisting obligation." (citing *Beeks v. Hundley*, 34 F.3d 658 (8th Cir. 1994)).

    The Eighth Circuit's decision in *Beeks v. Hundley* is analogous. In *Beeks*, the court declined to apply *Hankins*' holding to reach the same result. 34 F.3d at 659. There, to satisfy prisoners' obligations under Iowa's victim restitution act, Iowa sought to disgorge proceeds from the prisoners' successful § 1983 lawsuit against state prison officials. The court found that since the plaintiffs had preexisting obligations to pay restitution to the crime victims, the compensatory purpose of § 1983 was not undermined. Despite losing the immediate benefit of the awards, from a long-term financial standpoint, the plaintiffs received virtually the entire benefit of the judgment when the proceeds were used to satisfy restitution debts. *Id.* at 661. Here, Parsons also had preexisting debts, including the judgment against him in the wrongful death action, his incarceration expenses, and other debts which required him to file for bankruptcy. (Costs of incarceration are considered preexisting obligations in Michigan. *See Rusiecki*, 2003 Mich. App. LEXIS 837, at *3).

    Moreover, it appears that Parsons was able to retain a substantial portion of his § 1983 settlement award against Mason County, despite having to satisfy these other obligations. Under the terms of the settlement agreement, he was to receive 20% of his award while in prison and then 47% upon his release, until the incarceration costs were repaid, at which point he would receive 67% of the award. Therefore, it does not appear here that Michigan's reimbursement statute undermined the compensatory purpose of § 1983.

11

allowing reimbursement was not inconsistent with § 1983's goal of deterring future deprivations of constitutional rights.[10] *Id.* As in *Moore*, Parsons's judgment was not against Michigan, but one against a third-party (Mason County), and there is no allegation that Michigan ever indemnified Mason County. Thus, allowing the State of Michigan to collect the costs of incarcerating Parsons leaves intact Mason County's incentive to respect its inmates' constitutional rights.

Therefore, for the above reasons, the Court concludes that Plaintiff's § 1983 preemption argument is insufficient to establish federal question jurisdiction.

II. Supplemental Jurisdiction

Although not alleged in the complaint as a basis for jurisdiction over its claim against the Department, Plaintiff asserts in response to the Department's motion and in its objections to the report and recommendation that the Court should exercise its discretionary supplemental jurisdiction and hear the state law claim.

With certain exceptions not relevant here, 28 U.S.C. § 1367(a) provides that in actions where a court otherwise has original jurisdiction over at least one claim, the court also has supplemental jurisdiction over all other claims "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III." § 1367 codified the principles set forth in the Supreme Court's decision in *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715 (1966), so courts consider *Gibbs* in considering whether a state law claim is "so related" to the other claims that § 1367(a) is satisfied. *See City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 164 (1997); *see also Salei v.*

---

[10] The panel did not discuss the state law's impact on the compensatory purpose served by § 1983.

*Boardwalk Regency Corp.*, 913 F. Supp. 993, 998 (E.D. Mich. 1996) ("*Gibbs* continues to define the extent of this Court's subject matter jurisdiction under § 1367.").

Under *Gibbs*, a district court has the power to hear a pendant state law claim when that claim and the claim over which the court has original jurisdiction "derive from a common nucleus of operative fact," and are so closely related that the plaintiff "would ordinarily be expected to try all of them in one judicial proceeding." *Gibbs*, 383 U.S. at 725; *see Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 349 (1988); *Soliday v. Miami County, Ohio*, 55 F.3d 1158, 1165 (6th Cir. 1995). If a district court finds these criteria satisfied, it has the power also to hear the pendent claim, though not the duty. *See* 28 U.S.C. § 1367(c); *Gibbs*, 383 U.S. at 726. It is only when a federal court has the *power* to hear both claims that it may then exercise its *discretion* to dismiss or retain the pendent claims. *See Carnegie-Mellon*, 484 U.S. at 618-19 ("*Gibbs* drew a distinction between the power of a federal court to hear state-law claims and the discretionary exercise of that power."). If the court lacks the constitutional power to hear the claim, it cannot simply "exercise its discretion" and hear the claim anyway. A grant of discretion cannot expand judicial power.[11]

---

[11] The Department's briefing is seriously confused in this regard. *See* Def.'s Br. 9-10. The Department asks the Court to *exercise its discretion* and dismiss the Plaintiff's state law claim against it because, among other reasons, the Court lacks federal jurisdiction in the first place. But, if the Court lacked federal jurisdiction in the first place, supplemental jurisdiction would be irrelevant; even if the Court wanted to hear the action, it could not. Contrary to the Department's statements, the Court *most certainly does* have federal jurisdiction in this action. The Department overlooks the presence of the constitutional claims against co-defendants in counts one and three. The Department also asks the Court to exercise its discretion not to hear the contract claim because "compelling reasons" exist not to. 28 U.S.C. 1367(c)(4). Its "compelling reason" is the absence of original jurisdiction. But such an absence is not a "compelling reason;" it is a dispositive one. Furthermore, the Department contends that Plaintiff's misjoinder of the Department under Rule 20(a)(2) provides another "compelling reason" for declining to hear the claim against it. Misjoinder of a party is not a "compelling reason" to decline exercising jurisdiction. The joinder requirements of Rule 20(a)(2) are stricter than the "same case" requirements of §

The two cases discussed below, *Soliday* and *Salei*, are instructive for determining whether the Court has the power to hear Plaintiff's contract claim against the Department.

In *Soliday v. Miami County, Ohio*, 55 F.3d 1158 (6th Cir. 1995), a panel of the Sixth Circuit held that the district court lacked the power to exercise supplemental jurisdiction over the plaintiff's state law claims. The action involved claims under § 1983 brought by the decedent's estate against various corrections officers for their alleged deliberate indifference to the decedent's serious medical needs, leading to his death. After determining the cause of death, the defendant coroner ordered the decedent's body be cremated for health reasons. The estate sued the coroner for violating state law[12] and tried to invoke the court's supplemental jurisdiction to back the claim. Applying the standard in *Gibbs*, the Sixth Circuit affirmed the district court's dismissal of the claim, but for a different reason.[13] It found the state law claim too unrelated to the federal claims to invoke supplemental jurisdiction. Specifically, it stated:

> Plaintiff's state law claim against [the coroner] is distinct and separable from the federal claims over which the District Court retained jurisdiction. Plaintiff's remaining claims accuse Miami County and two of its employees at the jail of being deliberately indifferent to Perkins' serious medical needs. Plaintiff's state

---

1367(a) and *Gibbs*. The Court would not lack judicial the power to hear a pendent claim against a party simply because that party was misjoined under Rule 20(a)(2). *See* 13D Federal Practice & Procedure § 3567.1, at 349 ("The *Gibbs* 'common nucleus' test is broader than the 'transaction or occurrence' test used in the Civil Rules."); Fed. R. Civ. P. 20(a)(2). The Department's discussion of Rule 20 joinder in no way substitutes for a reasoned discussion of § 1367(a).

[12] The estate also sued the coroner for constitutional violations, but the district court granted summary judgment on the claim, and the court of appeals affirmed. *Soliday*, 55 F.3d at 1164.

[13] The district court dispensed with an analysis of § 1367(a) – impliedly assuming it was satisfied – and went straight to a discussion of discretion under § 1367(c). *Soliday v. Miami County, Ohio*, No. C-3-91-153, 1993 WL 1377511, at *10-11 (S.D. Ohio Nov. 22, 1993).

14

law claim against Meeker deals with various statutory provisions regarding the duties of coroners.

*Id.* at 1165.

In *Salei*, 913 F. Supp. 993, the district court found the plaintiff's federal and state law claims too unrelated to be considered one "case or controversy" under Article III. There, the plaintiff sued a casino in federal court for breaching a settlement agreement, disobeying a court order, and violating the federal Fair Credit Reporting Act. Although the facts giving rise to the state law claims also gave rise to the federal claim in a broad, but-for, causal sense, such that the claims were part of a "common set of facts," the court found that the claims did not share the same "*operative* facts." *Id.* at 999 (emphasis added); *see also id.* ("The facts that are relevant to the resolution of Plaintiff's FCRA claim are completely separate and distinct from the facts that bear upon Plaintiff's state claims."). The success of the federal claim did not depend on whether the plaintiff also could prove the state law claims, and the plaintiff could prove the federal claim without ever mentioning the facts underlying the state law claims. *Id.* Likewise, the state law claims could be resolved without considering the facts underlying the federal claim. The court concluded that two distinct sets of "operative facts" surrounded the plaintiffs state and federal claims, and that the plaintiff would ordinarily be expected to bring these claims in separate actions. *Id.* To hear both cases would "require inquiry into a distinct and independent set of events surrounding the settlement agreement between the parties in the prior . . . litigation," demonstrating the lack of a common nucleus of operative facts. Accordingly, the court held that it lacked the power to exercise supplemental jurisdiction over the state law claims. *Id.* at 1000.

This case is like *Soliday* and *Salei.* Plaintiff's deliberate indifference claim against Heebsh and Correctional Medical Services is "distinct and separable" from the contract

claim against the Department. *Soliday*, 55 F.3d at 1165. The deliberate indifference claim involves Parsons's medical treatment (or lack thereof) just prior to his death. The contract claim, on the other hand, involves the interpretation of a settlement agreement between Parsons and the Department executed in 1994. Although Parsons's death gave rise to the contract claim in a broad, but-for, causal sense, and thus both claims involve the common fact of Parsons's death, the federal and state claims do not share the same "operative facts." *Salei*, 913 F. Supp. at 999. The operative facts in the deliberate indifference claim include Heebsh's knowledge and the quality of treatment Parsons received just before he died. By contrast, the operative fact in the contract claim is the intent of the Department and Parsons as embodied in the settlement agreement. Proving the contract claim will not require consideration of the facts underlying the constitutional claim, and vice versa. Moreover, because of the differences in the relevant facts required to prove each claim, Plaintiff would ordinarily be expected to bring the claims in separate actions. Resolution of the constitutional claims will have no *res judicata* effect on the contract claim, and vice versa. *Cf. Gibbs*, 383 U.S. at 724 (pendent jurisdiction and doctrine of *res judicata* both find support in the "weighty policies of judicial economy and fairness"); *see also* 13D Federal Practice and Procedure § 3567.1, at 341 n.16 ("A claim will invoke pendent jurisdiction under Gibbs if it is so closely related to the jurisdiction-invoking claim that principles of claim preclusion or res judicata would require the plaintiff to join them in one case.").

Although not raised in the complaint or the response to the Department's motion to dismiss, Plaintiff apparently argued in the motion hearing before the magistrate judge and argues in its objections to the report and recommendation, that the state and federal claims are sufficiently related by the question of whether Plaintiff received the care in prison for

which he was apparently paying. Pl.'s Objs. at 13. Plaintiff argues that the Department breached the contract by requiring Plaintiff to pay for constitutionally deficient medical care. As noted above, this claim is not pleaded in the complaint and plaintiff never sought leave to add such a claim. Plaintiff alleges in the complaint only that the Department breached the settlement agreement by continuing to collect 47% of Parsons's annuity *after* he died, despite the fact that his body was "released from prison." Compl. ¶¶ 44-46.

Plaintiff offered no argument in its objections as to why the report was wrong when it found this claim never pleaded and not cognizable. *See* Pl.'s Objs. pt. III.D. By not specifically objecting to this portion of the report and recommendation, Plaintiff has waived review of the conclusion. *See Spencer*, 449 F.3d at 725. But even if Plaintiff had not waived review, the Court finds on its own that this claim was never pleaded, and for that reason, is not cognizable here.

For the above reasons, the Court holds that it lacks supplemental jurisdiction over Plaintiff's state law claim against the Department.

## CONCLUSION

The Court has conducted a de novo review of the entire portion of the record relating to the Department's motion to dismiss. The Court concludes that it lacks jurisdiction – both original and supplemental – over Plaintiff's contract claim against the Department (count II). The claim will be dismissed without prejudice. The Court takes no position on the other issues raised by the Department in its motion to dismiss.

**WHEREFORE**, it is hereby **ORDERED** that the Report and Recommendation (docket no. 18) is **ADOPTED** insofar as it is consistent with the Court's opinion above. In all other respects it is **REJECTED.** Plaintiff's objections to this portion are **OVERRULED.**

**IT IS FURTHER ORDERED THAT** Defendant Michigan Department of Treasury's motion to dismiss (docket no. 13) is **GRANTED in part**;

**IT IS FURTHER ORDERED THAT** Plaintiff's claim against the Michigan Department of Treasury (count II) is **DISMISSED without prejudice** for lack of subject matter jurisdiction.

**SO ORDERED.**

       s/Stephen J. Murphy, III
       STEPHEN J. MURPHY, III
       United States District Judge

Dated: September 30, 2010

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on September 30, 2010, by electronic and/or ordinary mail.

       Alissa Greer
       Case Manager