# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

JEANNE PARSONS, successor Personal
Representative of Estate of Randy J. Parsons,

          Plaintiff,

v.

SARA HOPE HEEBSH, P.A., and
CORRECTIONAL MEDICAL SERVICES,
INC.,

          Defendants.

_____ /

Case Number: 09-14411

STEPHEN J. MURPHY III
UNITED STATES DISTRICT JUDGE

VIRGINIA M. MORGAN
UNITED STATES MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION TO GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. No. 23)

In this 42 U.S.C. § 1983 prisoner civil rights case, Plaintiff Jeanne Parsons, the successor personal representative of estate of Randy J. Parsons ("Parsons"), alleges that Defendants Sara Hope Heebsh and Correctional Medical Services were deliberately indifferent to Parsons' medical needs, in violation of the Eighth and Fourteenth Amendments. Presently before the court is Defendants' motion for summary judgment. (Doc. No. 23). The motion has been fully brief. Pursuant to Local Rule 7.1(f)(2), the court dispensed with oral argument and has made a determination on the motion based on the submissions. For the reasons discussed below, the court recommends that Defendants' motion for summary judgment be **GRANTED**.

## I. Background

Randy Parsons, the decedent, was a prisoner in the custody of the Michigan Department of Corrections at the time of his death. He was mentally ill and had seizure condition and he took

1

medications for his conditions. (Compl. ¶¶ 11, 12). Three days prior to his death, on August 25, 2004, Parsons was transferred from the Gus Harrison Correctional Facility to Standish Maximum Correctional Facility. (Compl. ¶ 14).

At 8:00 p.m. on the night of his arrival at Standish, Parsons was screened by a nurse performing intake at the prison. (Compl. ¶ 16). The nurse tagged Parsons for a follow-up examination by the medical service provider, Defendant Hope Heebsh, P.A., and the mental health provider, Dr. McCarthy. (Doc. No. 23, Defs.' MSJ Ex. A, Medical Records 2 [hereinafter Medical Records]). The intake sheet indicates that Parsons arrived at Standish without his medications. (Medical Records 2).

The following day, August 26, 2006, P.A. Heebsh examined Parsons at 8:49 a.m. (Medical Records 4-5). P.A. Heebsh testified that Parsons reported to her during the screening that he was taking his medications as directed. (Doc. No. 23, Defs.' MSJ Ex. B, Heebsh Dep. 29 [hereinafter Heebsh Dep.]). P.A. Heebsh could not determine from her notes from the screening whether or not Parsons' medications had traveled with him from his previous facility. (Heebsh Dep. 30). She also testified that she would not have seen the intake sheet filled out by the nurse before she performed her examination of Parsons. (Heebsh Dep. 21-22). Nonetheless, P.A. Heebsh prescribed Dialantin, an anti-seizure medication, and ordered that the prescription be started on August 26, 2004, the same day that it was written. (Medical Records 5).

According to P.A. Heebsh, once a prescription order was written, it was sent to the nurses and it was up to a nurse to procure the medication either from the local pharmacy, if the need was urgent, or from PharmCorr, a pharmacy in Oklahoma that would overnight prescriptions to the prison. (Heebsh Dep. 31-32). If P.A. Heebsh specified in her prescription order that the medication

was to "start today" then the nurses knew to obtain the prescription from the local pharmacy. (Heebsh Dep. 20, 30). P.A. Heebsh did not write "start today" on Parsons' prescription, therefore, the prescription was ordered from PharmCorr and it would arrive the following day. (Medical Records 5; Heebsh Dep. 30). In the event that a medication was needed and it could not be obtained through the normal methods, the prison had a stock box of medications that the nurses could access. (Heebsh Dep. 20).

Parsons was also evaluated by the mental health provider, Dr. McCarthy on August 26, 2004 at 12:33 p.m. (Medical Records 6). Dr. McCarthy noted that Parsons arrived without his medications and he prescribed Lithium, Zyprexa, and Remeron. (Medical Records 6). Dr. McCarthy gave special instructions that five days worth of the drugs be obtained from the local pharmacy. (Medical Records 6).

Parsons received his first doses of medications at Standish on August 27, 2004 during the 6:00 p.m medicine pass. (Medical Records 7-17). According to the medical records, the nurse dispensed to Parsons the first dose of Dilantin, as prescribed by P.A. Heebsh and ordered from PharmCorr, and his first doses of the psychotropic medications prescribed by Dr. McCarthy, which were ordered from the local pharmacy. (Medical Records 7-17). Parsons also received his medications on the morning of August 28, 2004. (Medical Records 7-17).

During dinner on August 28, 2004, Parsons began to act strangely in the chow line. (Medical Records 19). Parsons was "laid in" to his cell at approximately 4:37 p.m.[1] (Medical Records 19). A short time later, a prison guard checked on Parson and found him unresponsive on the floor.

---

[1] When a prisoner is "laid in" his cell, he may not leave his cell until he is seen by a prison official or medical service provider.

(Medical Records 19). Health care was notified and the prison guards began chest compressions. (Medical Records 19). An ambulance was called and arrived at 5:21 p.m. (Medical Records 19). Parsons was transported to Standish Community Hospital, where he was pronounced dead at 5:56 p.m. (Medical Records 19).

Two autopsies were performed. The Arenac County Medical Examiner performed the first autopsy, and concluded that Parsons died of "seizures disorder." (Doc. No. 28, Pl.'s Resp. Ex. N, Arenac County Autopsy Report). Parsons' family had a second autopsy performed at Spectrum Health by a forensic pathologist, Stephen D. Cohle, M.D. (Doc. No. 28, Pl.'s Resp. Ex. N, Spectrum Health Autopsy Report). Dr. Cohle concluded that Parsons' cause and manner of death were undetermined. (*Id.*) Dr. Cohle had a toxicology screen done on a sample of Parsons' blood. (*Id.*) The laboratory found less than 20 ng/mL$^2$ of Buproprion, an anti-depressant sold as Wellbutrin or Zyban, 50 ng/mL of Mirtazepine, an anti-depressant sold as Remeron, and 80 ng/ML of Metoprolol, a beta-blocker used to treat hypertension, which is sold as Lopressor or Toprol-XL. (*Id.*) According to the evidence presented by the parties, Parsons was never prescribed Buproprion or Metoprolol. Buproprion is contra-indicated for patients with seizure disorders. (Doc. No. 23, Defs.' MSJ, Ex. I, Bukacel Dep. 26).

According to expert witness Denise Geralyn Bukacel, Pharm.D., the reason that Parsons did not have any Dilantin in his system was because he was not ingesting, not because it was not dispensed to him. (Bukacel Dep. 28-29). Also, Pharmacist Bukacel testified that in order for Parsons to not have any Dilantin in his system, he could not have ingested any Dilantin in a minimum of 100 hours and a maximum of 125 hours. (Burkacel Dep. 33).

---

$^2$Nanograms per milliliter.

4

On August 10, 2007, Plaintiff, as the personal representative of the estate of Randy J. Parsons, filed a civil rights action against Dr. McCarthy, the prison psychiatrist who evaluated Parsons shortly after his arrival at Standish Maximum Correctional Facility, Nurses Pausits and Alexander, prison nurses who either evaluated Parsons or distributed medicine to him, Prison Guards Bond and Kocot, who attended to Parsons before his death, Patricia Caruso, the former Director of the Michigan Department of Corrections, and Thomas Birkett, the warden of the Standish Maximum Correctional Facility, pursuant to 42 U.S.C. § 1983, alleging denial and delay of medical care in violation of the Eighth Amendment to Constitution of the United States, violation of the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States, state tort claims for gross negligence, and violation of the "Freedom of Information Act." *Parsons v. Caruso, et al.*, 07-13335.

On August 20, 2007, that case was referred to this court for all pretrial proceedings. After several rounds of dispositive motions, the court recommended that the case be dismissed in its entirety on the Defendants' summary judgment motions, a recommendation that was accepted by the district judge. *Parsons v. Caruso, et al.*, 07-13335 (March 31, 2010) (Murphy, J.).

Plaintiff filed the instant lawsuit on November 10, 2009. (Doc. No. 1). This lawsuit is premised on the same factual circumstances that gave rise to the earlier lawsuit. In this lawsuit, however, Plaintiff alleges that P.A. Heebsh and CMS were deliberately indifferent to Parsons' medical needs, which resulted in his death.

## II. Standard of Review

The United States Court of Appeals for the Sixth Circuit has summarized the standard for summary judgment as follows:

5

> Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact such that the moving party is entitled to judgment as a matter of law. "The judge is not to weigh the evidence and determine the truth of the matter, but rather determine whether there is a genuine issue for trial."

*Totes Isotoner Corp. v. Int'l Chemical Workers Union Council/UFCW Local 664C*, 532 F.3d 405, 411-12 (6th Cir. 2008) (internal citations omitted).

### III. Analysis

Defendants first argue that P.A. Heebsh should be granted summary judgment because there is insufficient evidence from which a reasonable jury could conclude that P.A. Heebsh knew that Parsons arrived without his medication, Parsons would not receive a dose of Dilantin as ordered on August 26, 2004, that it would be harmful to Parsons if he did not receive Dilantin on August 26, 2004, Parsons regularly refused to ingest his Dilantin or that Parsons ingested Wellbutrin. (Doc. No. 23, Def.'s MSJ 14-15). Defendants argue that allegations that a medical service provider was negligent does not rise to the level of deliberate indifference. *Id.*

Plaintiff responds that P.A. Heebsh knew or should have known that Parsons was an unreliable historian who routinely refused medication. (Doc. No. 28, Pl.'s Resp. 12-13). Plaintiff argues that P.A. Heebsh was deliberately indifferent by ordering Dilantin for Parsons but failing to procure it for him. *Id.* at 13-14. Also, Plaintiff argues that it was unreasonable for P.A. Heebsh to write a prescription for Dilantin, without instructions that it be obtained from the local pharmacy, and expect that it be administered to Parsons the same day. *Id.* at 15. Plaintiff contends that there is sufficient evidence in the record from which a jury could conclude that P.A. Heebsh knew that Parsons arrived without medication, refused his medications regularly, had not been administered a dose of Dilantin since his arrival at Standish, and knew the risks associated with a patient with a

seizure disorder going without his medication. *Id.* at 15. For these reasons, Plaintiff asserts that summary judgment should be denied.

The Eighth Amendment prohibits prison and jail officials from acting with deliberate indifference to the medical needs of their prisoners. *Estelle v. Gamble*, 429 U.S. 97, 103-104 (1976). A deliberate indifference claim has two components, one objective and the other subjective. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective component requires Plaintiff to show a "sufficiently serious" medical need. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A "sufficiently serious" medical need is one that a physician has diagnosed as requiring mandatory treatment or one that a lay person would easily recognize as needing a doctor's attention. *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (citations omitted). It is undisputed that Parsons' seizure disorder was a serious medical need that required a doctor's, or in this a physician's assistant's, attention.

The subjective component requires Plaintiff to that show "the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

Plaintiff alleges in the complaint that P.A. Heebsh "had actual knowledge that Parsons had arrived at the SMF facility without his Dilantin or other medications," P.A. Heebsh "had actual knowledge" that the Standish formulary did not stock Dilantin, P.A. Heebsh "did not administer Dilantin to Parson, despite actual knowledge [that] he had missed four doses by the time she saw him," P.A. Heebsh knew that prescribing Dilantin without special instructions would result in the medication being ordered from Pharmcorr and that it would not arrive for "several days," and P.A.

Heebsh knew and disregarded the high risk of serious harm to Parsons health by failing to insure that Parson received Dilantin "sooner than several days' time." (Compl. ¶ 18).

The evidence borne out in discovery does not support Plaintiff's allegations, nor do the facts of this case give rise to a deliberate indifference claim. In order to prevail, Plaintiff must show that P.A. Heebsh "subjectively perceived facts from which to infer substantial risk to the prisoner, that [she] did in fact draw the inference, and that [she] then disregarded that risk." *Comstock*, 273 F.3d at 703.

The record does not contain evidence that P.A. Heebsh knew that Parsons had not taken his medication prior to his arrival at Standish, which must have been the case because Parsons could not have ingested Dilantin within 100 hours of his death or it would have been present in his system. ((Burkacel Dep. 33). Further, P.A. Heebsh testified that she was "made aware he was taking his meds" when she examined him on August 26, 2004, therefore, P.A. Heebsh did not perceive facts from which she could have inferred that Parsons had not taken his Dilantin in the last 24 hours. Next, there is testimony that back-up Dilantin was stocked at Standish, (Doc. No. 23, Defs.' MSJ Ex. G, Pausits Dep. 36-37; Heebsh Dep. 20). However, it was not P.A. Heebsh's responsibility to procure medication for prisoners, that was the job of the health unit manager; P.A. Heebsh was only responsible for writing the prescription, which she did immediately upon examining Parsons. (Heebsh Dep. 31-32). In addition, P.A. Heebsh specified in her order that the Dilantin prescription was to start on August 26, 2004. (Medical Records 5). Plaintiff also faults P.A. Heebsh for failing to specify that the medications should have ordered locally. Again, it was not up to P.A. Heebsh to obtain the prescriptions but, even so, she testified that prescriptions from PharmCorr were usually overnighted to the prison, and did not take several days to arrive as alleged by Plaintiff. In fact, the

8

medications arrived from Pharmcorr and were dispensed to Parsons on August 27, 2004, the day after P.A. Heebsh wrote the prescription. Simply put, there is no genuine issue of material fact that P.A. Heebsh ascertained a substantial risk to Parsons health and deliberately disregarded that risk. At best, Plaintiff's allegations and the facts in the record would support a negligence claim, which are not sufficient to prevail on a deliberate indifference claim. *See Gibson v. Foltz*, 963 F.2d 851, 853 (6th Cir. 1992).

Lastly, the court notes that the Dilantin that P.A. Heebsh prescribed to Parsons was administered to him: one dose on August 27, 2004 and a second dose on August 28, 2004. (Medical Records 7-17). There is absolutely no evidence that P.A. Heebsh or anyone else at Standish was aware that Parsons did not ingest the Dilantin after it was administered and disregarded the risk posed by his refusal to ingest. Plaintiff, therefore, has failed to provide any evidence that P.A. Heebsh's alleged failure to procure Dilantin was the proximate cause of Parsons' death. Moreover, there is absolutely no explanation as to how Wellbutrin, which is contraindicated for seizure disorders, entered Parsons' system. No reasonable fact-finder could attribute the absence of Dilantin or the presence of Wellbutrin to P.A. Heebsh. Accordingly, she should be granted summary judgment.

Because there is no factual issue giving rise to a deliberate indifference claim exists, P.A. Heebsh is entitled to summary judgment.

Defendants next argue that Plaintiff's unconstitutional policy, practice or procedure claim against CMS should be dismissed because the evidence would not permit a reasonable juror to conclude that CMS policy resulted in harm to Parsons. (Doc. No. 23, Defs.' MSJ 16).

Plaintiff responds that there is ample evidence that CMS maintained an unconstitutional

9

policy of requiring medical service providers to obtain all medications from PharmCorr and denying access to medications from local pharmacies. (Doc. No. 28, Pl.'s Resp. 16).

Plaintiff has asserted a *Monell* claim against CMS. In *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 690 (1978), the Supreme Court held that local government units, i.e. municipalities, were "persons" for the purposes of 42 U.S.C. § 1983, and local governing bodies, therefore, can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. *Id.* Thus, a plaintiff may recover against local governments and local government officials, sued in their official capacities, for unconstitutional policies, customs, and practices that injured the plaintiff. *Id.* at 690-91, 694. The Supreme Court emphasized that its decision only applied to municipalities that were not considered part of the state for purposes of the Eleventh Amendment. *Id.* at 691 n. 54.

Plaintiff may not pursue a *Monell* claim against CMS because CMS is not a municipality. If anything, as an MDOC contractor, CMS would be considered part of the state for purposes of the Eleventh Amendment. *Turnboe v. Stegall*, 234 F.3d 1270 (6th Cir. 2000) (Table). *Monell* claims also may not be brought against the state. *See Monell*, 436 U.S. at 691 n. 54. Plaintiff's *Monell* claim against CMS is legally unavailable. Accordingly, it should be dismissed as a matter of law.

### IV. Conclusion

For the reasons discussed above, Defendants' motion for summary judgment should be **GRANTED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen(14) days of service of a copy hereof as provided for in 28

U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

                                                  S/Virginia M. Morgan
                                                  Virginia M. Morgan
                                                  United States Magistrate Judge

Dated: February 24, 2011

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System and/or U. S. Mail on February 24, 2011.

                                                  s/Jane Johnson
                                                  Case Manager to
                                                  Magistrate Judge Virginia M. Morgan