UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEANNIE PARSONS,

    Plaintiff,

v.

HOPE S. HEEBSH et. al.,

    Defendants.

_____/

Case No. 09-cv-14411

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER ADOPTING IN PART REPORT
AND RECOMMENDATION** (docket no. 32)**, SUSTAINING IN
PART AND OVERRULING IN PART PLAINTIFF'S
OBJECTIONS** (docket no. 33), **AND GRANTING
<u>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>** (docket no. 23)

Plaintiff Jeannie Parsons, the successor personal representative of the estate of Randy J. Parsons ("Parsons"), filed this action pursuant to 42 U.S.C. § 1983, alleging that defendants Sara Hope Heebsh and Correctional Medical Services ("CMS") (collectively "Defendants") were deliberately indifferent to Parsons's medical needs, resulting in his death. Defendants filed a motion for summary judgment. The motion was referred to the magistrate judge, who issued a Report and Recommendation ("R & R") recommending that the Court grant Defendants' motion. Plaintiff timely objected to the R & R. Defendants did not respond to Plaintiff's objections. For the following reasons, the Court will sustain in part and overrule in part Plaintiff's objections; adopt the R & R in part, with modifications; and grant Defendants' motion for summary judgment.

**STANDARD OF REVIEW**

1. <u>Review of R & R</u>

The standard of review applicable to a magistrate judge's report and recommendation is dependent upon whether a party files objections. The Court need not review portions of a report to which a party does not object. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). The Court, however, "must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instruction." Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."). Overly broad objections do not satisfy the objections requirement. *Spencer v. Bouchard*, 449 F.3d 721, 725 (6th Cir. 2006). The objections must be clear enough that the court can "discern those issues that are dispositive and contentious." *Id*. Objections that merely challenge the correctness of the magistrate's recommendation but fail to specify what findings were erroneous are insufficient. *Id*.

2. <u>Summary Judgment</u>

Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact such that the moving party is entitled to judgment as a matter of law. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). A fact is "material" for purposes of summary judgment "if proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense" advanced by the

parties. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Accordingly, when a reasonable jury could not find that the nonmoving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate. *Id.*; *Feliciano v. City of Cleveland*, 988 F. 2d 649, 654 (6th Cir. 1993). "The judge is not to weigh the evidence and determine the truth of the matter, but rather [is to] determine whether there is a genuine issue for trial." *Sterling China Co. v. Glass, Molders, Pottery, Plastics and Allied Workers Local No. 24*, 357 F.3d 546, 551 (6th Cir. 2004).

## BACKGROUND

The Court will briefly summarize the factual background of the case, but incorporates by reference the section of facts contained in Judge Morgan's R & R.

At the time of his death, Parsons was incarcerated and in the custody of the Michigan Department of Corrections ("MDOC"). Parsons had a documented history of mental illness and seizure disorder, and was on numerous medications, including Dilantin, an anti-seizure medication. On August 25, 2004, Parsons was transferred to the Standish Maximum Correctional Facility ("Standish"). Parsons arrived at Standish without his medications.

On the night of his arrival at Standish, Parsons was screened by a nurse. The following day, he was examined by Heebsh, a physician's assistant, and Dr. McCarthy, a psychiatrist. Heebsh prescribed Dilantin for Parsons's seizure disorder, and indicated on the prescription that Parsons should be started on Dilantin that same day – August 26, 2004. The MDOC nursing staff, however, ordered the Dilantin from PharmaCorr, a CMS subsidiary located in Oklahoma. The medication arrived the next day, and, according to

prison records, was administered to Parsons on August 27 and 28. On August 28, 2004 – three days after he arrived at Standish – Parsons died in his cell.

Two autopsies were performed. One indicated that Parsons died of "seizures disorder." The second indicated that the cause and manner of death were undetermined. A toxicology screen done at the same time as the second autopsy identified traces of Wellbutrin, an anti-depressant which Parsons had never been prescribed, in his system, but found no trace of Dilantin.

In August 2007, Plaintiff filed a lawsuit against various individuals, alleging that the defendants had denied and delayed Parsons's medical care and were thereby responsible for his death. After numerous defendants were dismissed, either voluntarily or involuntarily, the Court granted summary judgment as to the remaining six defendants, including Dr. McCarthy, nurses who had either evaluated Parsons or distributed medications to him, the former director of MDOC, and the warden of Standish. Subsequently, Plaintiff filed the instant suit, alleging that defendant Heebsh was deliberately indifferent to Parsons's medical needs, and that Heebsh's employer CMS, a private corporation contracted out with MDOC to manage inmate health at Standish, implemented an unconstitutional custom, policy, or practice requiring that all prescriptions be obtained from PharmaCorr, in violation of Parsons's constitutional rights.

## ANALYSIS

A. Summary Judgment as to CMS

Plaintiff asserts that CMS instituted a policy at Standish to obtain all medication from PharmaCorr and to deny inmates medication until it could be obtained from the same. Magistrate Judge Morgan recommended granting summary judgment in favor of CMS, after

4

finding that CMS, as a private corporation, could not be subject to a "policy, custom, and practice" (i.e., *Monell*[1]) claim. Moreover, Magistrate Judge Morgan concluded that "if anything, as an MDOC contractor, CMS would be considered part of the state for purposes of the Eleventh Amendment." *See* R & R at 10.

Plaintiff objects to Magistrate Judge Morgan's finding and asserts that CMS is not an arm of the state entitled to immunity under the Eleventh Amendment. The Court sustains the objection. A private or public corporation may be held liable for constitutional violations under § 1983 where a plaintiff establishes that the corporations' policy or custom caused the alleged injury. *See Braswell v. Corr. Corp. of Am.*, No. 09-6100, 2011 U.S. App. LEXIS 7903, at *14 (6th Cir. April 15, 2011) (holding that "[a] private corporation that performs the traditional state function of operating a prison acts under color of state law for purposes of § 1983" will be held liable for constitutional violations if the corporation's policy was "the moving force" behind the alleged constitutional deprivation) (internal citation omitted); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814, 817 (6th Cir. 1996). Moreover, "there is no indication that any court has recognized CMS as an 'arm of the state' for Eleventh Amendment purposes," nor did CMS argue that it is entitled to Eleventh Amendment immunity. *See Lamb v. Taylor*, No. 08-324, 2009 U.S. Dist. LEXIS 26853, at *6 (D. Del.

---

[1] In *Monnell v. New York City Dept. of Social Servs.*, 436 U.S. 658 (1978), the Supreme Court held that municipalities and local governments are "persons" subject to suit pursuant to § 1983 and may be held liable "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy" results in a constitutional deprivation. *Id.* at 690-91. In other words, a local government entity may be held liable under § 1983, when the local government's policy or custom is "'the moving force behind the deprivation,' such that the 'entity's policy or custom . . . played a part in the violation of federal law." *S.H.A.R.K. v. Metro Parks Serv. Summit Cnty*, 499 F.3d 553, 563 (6th Cir. 2007) (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (internal quotation marks omitted)).

5

Mar. 31, 2009). Accordingly, the Court sustains Plaintiff's objection and will consider Defendants' motion for summary judgment as to CMS de novo.

To prevail on her claim against CMS, Plaintiff must demonstrate that a CMS policy or custom deprived Parsons's of his constitutional rights. *Stracher v. Corr. Med. Sys., Inc.*, 7 F. App'x 459, 465 (6th Cir. 2001). In the analogous context of municipal liability, a policy is made "when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action" issues a final proclamation, policy or edict. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986). A custom, on the other hand, is an act "that has not been formally approved by an appropriate decisionmaker," but is "so widespread as to have the force of law." *Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997). Bare allegations of custom or policy, unsupported by evidence, are insufficient to entitle a plaintiff to relief. *Broyles v. Corr. Med. Servs.*, No. 08-1638, 2009 U.S. App. LEXIS 5494, at * 5 (6th Cir. Jan. 23, 2009).

Citing the precedent of a court appointed independent medical monitor in *Hadix v. Caruso*, No. 92-110, Plaintiff asserts that CMS instituted an unconstitutional policy of obtaining medication only from PharmaCorr and denying inmates medication until it could be obtained from the same. *See* Docket no. 28, ex. P. Moreover, Plaintiff cites evidence indicating that delivery from PharmaCorr was sometimes unreliable, resulting in delays in receiving prescriptions. McCarthy Dep. Tr. 17, 67-69; Report by Nat. Comm. on Corr. Health at 11 (docket no. 28, ex J). Plaintiff argues that as a result of this policy, Parsons was denied Dilantin for at least four days, which resulted in his death.

Plaintiff has not demonstrated that CMS had a policy or custom that resulted in Parsons's injury. First, the only evidence of a formal policy relating to ordering and

administering prescription medication pertains to MDOC policy.² *See* 6/4/2009 Heebsh Dep. Tr. 38. Further, while Plaintiff presents evidence that CMS had a contract with PharmaCorr, that PharmaCorr was CMS's preferred pharmacy, and that delivery from PharmaCorr was sometimes unreliable, there is no evidence that CMS had a policy requiring inmates to wait until prescriptions were received from PharmaCorr.

In fact, substantially all of the evidence demonstrates that medical staff at Standish could obtain medication from other sources. According to Heebsh an "emergency stock" of medication, including Dilantin, was kept in a box at Standish, that nurses were able to access. 6/4/2009 Heebsh Dep. Tr. 20-21; *see also* Pausits Dep. Tr. 60; Alexander Dep. Tr. 82. Moreover, when a prisoner arrived at Standish without medication, Heebsh wrote "start today" on the inmate's prescription, indicating that a few days worth of the medication should be ordered from a local pharmacy, until PharmaCorr was able to send a supply of the medication.³ *Id.* at 21, 32. And although Heebsh did not write "start today" on Parsons's Dilantin prescription, there is no evidence that she failed to do so because of

---

²MDOC policy states that in emergency situations, nurses are to consult with doctors and obtain medication from the emergency drug kit or the physician's box at Standish. MDOC Operating Procedure OP-NRH 04-06-170A (docket no. 23, ex. F). The policy further provides that during non-emergency situations when the pharmacy is not available, nurses should obtain prescriptions from the emergency or physician's box, or, if the inmate will suffer adverse consequences as a result of not receiving his medication, obtain the medication from an offsite pharmacy. *Id.* Moreover, where health care services are delivered by a private vendor, such as CMS, the vendor must comply with all MDOC policy, unless explicitly exempted by contract. MDOC Operating Procedure 03.04.100 (docket no. 23, ex. J).

³ Dr. McCarthy followed this same protocol when ordering other medication for Parsons. Dr. McCarthy testified that because it could take several days for prescriptions to arrive from PharmaCorr, he ordered a five-day supply of medication from a local pharmacy for Parsons. McCarthy Dep. Tr. 17.

7

CMS policy. In fact, Heebsh ordered that Parsons should begin taking Dilantin on August 26, 2004, *see* Medical Records at 4 (docket no. 23, ex. A), and the Court agrees with Magistrate Judge Morgan's conclusion that there is no evidence Heebsh knew that Parsons would not receive his medication that day.

Moreover, Plaintiff's contention that inmates were required to wait until medication was received from PharmaCorr is particularly unpersuasive given that Plaintiff's claims against Heebsh rest on the assertion that Heebsh could "override" CMS protocol and obtain the medication from a local pharmacy. *See* Pl. Resp. Br. 16 ("Heebsh . . . failed to override CMS's protocol to specify to the nurses to order Parsons' medication from the local pharmacy."). Plaintiff's evidence that a medical monitor, evaluating a different prison facility, found that the de facto policy at that facility was to wait until medication could be obtained from PharmaCorr, *see* Report in *Hadix v. Caruso* (docket no. 28, ex. P), is insufficient to create a material issue of fact in light of the evidence in this case.

Finally, there is also no evidence that Parsons's death was directly attributable to a delay in receiving Dilantin as a result of CMS policy. Dilantin was received from PharmaCorr on August 27, 2004 and, evidence demonstrates that it was administered to Parsons on both August 27 and 28. *See* Medical Records at 7, 8; Pausits Dep. Tr. 43-44. And while an autopsy of Parsons revealed no trace of Dilantin in Parsons's system when he died,[4] whether the Standish medical staff failed to distribute Dilantin or whether Parsons failed to take it, is irrelevant to the issue of CMS's liability. While evidence supports the

---

[4] According to testimony by Denise Bukacel, a clinical pharmacist, in order for there to be no discernable trace of Dilantin in Parsons's system when he died, Parsons must not have ingested Dilantin for approximately 100 to 125 hours prior to his death. Bukacel Dep. Tr. 33.

8

conclusion that Parsons died from a seizure, Plaintiff has cited no evidence demonstrating that the seizure would not have occurred but for the one day delay caused by ordering Dilantin from PharmaCorr instead of from a local pharmacy. To assume that the one day delay caused Parsons's death is pure speculation, insufficient to survive a motion for summary judgment. *See Morris v. Oldham Cnty. Fiscal Court*, 201 F.3d 784, 788 (6th Cir. 2000) (holding that the "mere existence of a scintilla of evidence in support of plaintiff's position will be insufficient" (quoting *Anderson*, 477 U.S. at 252)); *cf. Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2001) ("[A]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." (internal citation omitted)).

B. Factual Objections

Plaintiff also objects to several of Magistrate Judge Morgan's factual findings, and argues that the magistrate judge did not adhere to the standards for granting summary judgment because she took the evidence in a light most favorable to Defendants, not to Plaintiff. The Court overrules all of Plaintiff's factual objections for the reasons discussed below.

In objection i, Plaintiff objects to Judge Morgan's finding that "[t]he record does not contain evidence that P.A. Heebsh knew that Parsons had not taken his medication prior to his arrival at Standish." R & R at 8. In support of her objection, Plaintiff cites evidence demonstrating that Parsons arrived at Standish without his medication, and asserts that Heebsh should have known, based on a review of Parsons's chart, that he had not received Dilantin since he left his previous facility. Moreover, Plaintiff contends that Heebsh's

9

reliance on Parsons's statement that he was "taking his medications as directed" was unreasonable in light of the fact that Heebsh noted that Parsons was "a poor historian, histrionic with flight of ideas." These arguments are without merit. Plaintiff's contentions rest on assumptions about what Heebsh *should* have known. To demonstrate that Heebsh was deliberately indifferent, however, the relevant inquiry is what Heebsh *actually* knew. Plaintiff must show that Heebsh subjectively perceived the facts giving rise to an inference of a substantial risk to Parsons, and that she actually drew the inference. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Plaintiff has failed to produce any evidence supporting such a conclusion.

In objection ii, Plaintiff objects to Magistrate Judge Morgan's conclusion that "[t]he record does not contain evidence that P.A. Heebsh or anyone else at Standish was aware that Parsons did not ingest the Dilantin after it was administered." R & R at 44. In support, Plaintiff cites evidence demonstrating that Heebsh failed to indicate "start today" on her prescription, that she knew that the medication would take several days to arrive from PharmaCorr, and that medication ordered from a local pharmacy arrived sooner than medication ordered from PharmaCorr. Moreover, Plaintiff argues that prison records demonstrating that Parsons was administered Dilantin on August 27 and 28 are suspect in light of Parsons's behavior and the toxicology report. Again, the evidence cited by Plaintiff in support of her objection is misplaced. Evidence pertaining to when the medication arrived from PharmaCorr as compared to the local pharmacy has no bearing on whether Heebsh and other medical staff at Standish knew that Parsons had not ingested

Dilantin after it was administered.[5] Moreover, although Parsons became ill and toxicology reports showed no trace of Dilantin in his system at the time he died, Plaintiff has cited no evidence to support a conclusion that Heebsh, who saw Parsons on only one occasion, knew before his death that he had not ingested Dilantin.

In objection iii, Plaintiff objects to the magistrate judge's assertion that "[i]n the event that a medication was needed, and it could not be obtained through the normal methods, the prison had a stock box of medications that the nurses could access." R & R at 3. Plaintiff argues that despite this conclusion, Heebsh could still be liable because her failure to administer Dilantin to Parsons during her exam amounted to deliberate indifference. The Court notes that although Plaintiff frames her objection as a factual one, in reality Plaintiff objects to Magistrate Judge Morgan's legal conclusions regarding whether Heebsh was deliberately indifferent. Plaintiff has again failed to cite any evidence, however, demonstrating that Heebsh *actually* knew that Parsons faced an objectively serious risk of harm if she did not administer Dilantin to him during her examination. Moreover, Heebsh indicated on her prescription that Parsons's Dilantin prescription should begin the same day as the examination, and Plaintiff has not demonstrated that Heebsh knew Parsons would not receive his medication that day.

In objection iv, Plaintiff objects to Magistrate Judge Morgan's finding that "[i]n fact, medications arrived from PharmaCorr and were dispensed to Parsons on August 27, 2004 . . . thus, there is no factual issue giving rise to a deliberate claim against P.A. Heebsh."

---

[5]Further, as discussed *supra*, the medication was received from PharmaCorr on August 27, 2004, and Plantiff has not demonstrated that the one day delay in receiving medication caused Parsons's death.

11

R & R at 9. Plaintiff asserts that there is no evidence that the medication was ever received or administered to Parsons, which is attributable to Heebsh's failure to ensure that the prescription was ordered locally, instead of from PharmaCorr. Moreover, Plaintiff argues that because the toxicology report demonstrates that Parsons did not have Dilantin in his system when he died, whether Parsons was ever administered Dilantin while at Standish is a question for the jury.

The Court overrules this objection for several reasons. First, contrary to Plaintiff's assertions, there is admissible evidence that Standish received Dilantin and that the MDOC nurses administered it to Parsons. *See* Medical Records at 7, 8; Pausits Dep. Tr. 43-44. Second, whether the medication was actually administered to Parsons by the MDOC nurses is irrelevant to whether Heebsh was deliberately indifferent. And, moreover, the Court has already rejected Plaintiff's argument that whether Parsons was ever administered Dilantin is a question for the jury. In its order adopting the report and recommendation in Plaintiff's prior case based on the same facts, the Court stated that "for a jury to find that [MDOC Nurse] Pausits failed to administer Dilantin to Parsons, it would have to disregard the documentary evidence demonstrating that Pausits administered *Dilantin*, not Wellbutrin, and speculate about the possibility that Pausits administered the wrong medication. But, even if there was a mix up, there is no evidence that a mix up would have been done with deliberate indifference to the substantial risk of harm to Parson's health." *See* Case No. 07-13335, docket no. 140 (Mar. 31, 2010).

Accordingly, the Court overrules all of Plaintiff's factual objections. The Court agrees with the conclusion that summary judgment in favor of Heebsh is warranted.

**ORDER**

**WHEREFORE** it is hereby **ORDERED** that the R&R (docket no. 32) is **ADOPTED IN PART**, with modifications.

**IT IS FURTHER ORDERED** that Plaintiff's objections to the R & R (docket no. 33) are **SUSTAINED IN PART** and **OVERRULED IN PART**.

**IT IS FURTHER ORDERED** that Defendants' motion for summary judgment (docket no. 23) is **GRANTED.**

**SO ORDERED.**

                                    s/Stephen J. Murphy, III
                                    STEPHEN J. MURPHY, III
                                    United States District Judge

Dated: July 15, 2011

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on July 15, 2011, by electronic and/or ordinary mail.

                                    s/Carol Cohron
                                    Case Manager